34 P.3d 356

STATE of Arizona, Appellee,

v.

Angelita ESTRADA, Appellant.

State of Arizona, Appellee,

v.

Terry Lee Hatton, Appellant.

Nos. CR–00–0140–PR, CR–00–0306–PR.

Supreme Court of Arizona,
En Banc.

Nov. 15, 2001.

Janet Napolitano, Attorney General, by Diane M. Ramsey, Assistant Attorney General, Criminal Appeals Section, Phoenix, Attorneys for Appellee.

Dean M. Trebesch, Public Defender, by Lawrence S. Matthew, Deputy Public Defender, Phoenix, Attorneys for Appellant.

Janet Napolitano, Attorney General, by Consuelo M. Ohanesian, Assistant Attorney General, Criminal Appeals Section, Phoenix, Attorneys for Appellee.

Dean M. Trebesch, Public Defender, by Spencer D. Heffel, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

JONES, Vice Chief Justice.

¶ 1 We granted review and consolidated these cases in order to resolve a conflict between Divisions One and Two of the court of appeals concerning the sentencing provisions of Proposition 200, an initiative measure adopted by the voters of Arizona in 1996. The question is whether the probation eligibility provisions of the statute should be applied not only to convictions for possession or use of drugs, but also to convictions for

possession of drug paraphernalia. We have determined that Proposition 200 does apply to paraphernalia convictions where the presence of paraphernalia is associated only with personal use by individuals simultaneously charged, or who could have been simultaneously charged, with personal possession or use under Proposition 200.

## PROCEDURAL HISTORY AND BACKGROUND

### Proposition 200

¶ 2 Proposition 200 is officially designated the "Drug Medicalization, Prevention, and Control Act of 1996." This ballot initiative, codified as Arizona Revised Statute ("A.R.S.") section 13–901.01, substantially altered applicable sentencing statutes for drug offenders by mandating probation and treatment for the first and second offenses committed by nonviolent defendants.[1] "Briefly stated, the purpose was to change Arizona's drug control policy by treating drug abuse as a medical problem best handled by treatment and education, not by incarceration." *Foster v. Irwin*, 196 Ariz. 230, 231, 995 P.2d 272, 273 ¶ 3 (2000).

¶ 3 Immediately following its enactment, the legislature amended the statute to narrow the range of eligibility for probation, to limit those subject to mandatory probation, and to permit incarceration as a condition of probation. In 1998, however, in a second ballot measure, these amendments were repealed without ever taking effect. The voters rejected the legislative changes and again endorsed Proposition 200 as originally enacted. *See Calik v. Kongable*, 195 Ariz. 496, 990 P.2d 1055 (1999) (examining the history of A.R.S. § 13–901.01).

### THE FACTS

### Estrada

¶ 4 Police stopped the car in which Angelita Estrada was a passenger and searched the vehicle after arresting the driver. In a purse containing Estrada's driver's license and so-

cial security card, officers found methamphetamine in two plastic "baggies" and a single glass tube commonly used for smoking the drug.

¶ 5 The jury convicted Estrada of possession of a dangerous drug, a class 4 felony, and possession of drug paraphernalia, a class 6 felony. For the drug possession, she initially received a three-year term of probation pursuant to Proposition 200, but the court later concluded that a prior conviction made her ineligible for probation and sentenced her to 2.25 years in prison. The trial court also found the mandatory probation provision inapplicable to the paraphernalia conviction and sentenced Estrada to 0.75 years on that charge.

¶ 6 Estrada appealed her sentence to the court of appeals, Division One, arguing that Proposition 200 forbade imprisonment both on the drug count and the paraphernalia count. The court vacated the prison sentence on the drug count for independent reasons as stated in its opinion. Our review is limited to the paraphernalia question.

¶ 7 The appeals court noted correctly that the statute, on its face, does not apply to paraphernalia convictions. However, the court declined to apply a technical construction of the statute that would lead to the questionable result that while Proposition 200 offenders could not be imprisoned for possessing drugs, they could nevertheless be imprisoned for the less serious crime of possessing even simple paraphernalia items commonly employed in the personal use of those drugs.

¶ 8 The court concluded that the voters did not intend this result, as it would fully defeat the stated purpose of Proposition 200—that prison space should be reserved for violent offenders by diverting drug users from prison to treatment. The court thus vacated Estrada's prison sentence, holding that the mandatory probation provisions of Proposition 200 do apply to the possession of paraphernalia where the paraphernalia is associated solely with personal possession or use of

---

1. For a second drug offense, section 13–901.01(F) permits the imposition of up to one year in jail as a condition of probation. *See also*

*Calik v. Kongable*, 195 Ariz. 496, 499, 990 P.2d 1055, 1058 ¶ 13 (1999).

drugs. *See State v. Estrada*, 197 Ariz. 383, 388, 4 P.3d 438, 443 ¶ 23 (App.2000).

### Hatton

¶ 9 Police approached Hatton, who was riding his bicycle at 2:30 a.m. When the officer checked Hatton's identification, he discovered that Hatton was the object of an outstanding warrant. He was arrested and subjected to a search which produced methamphetamine, marijuana, a set of scales, baggies, a ledger, and glass pipes presumably for smoking methamphetamine.

¶ 10 Hatton was charged with one count of possession of methamphetamine for sale, one count of possession of marijuana, and one count of paraphernalia possession. On both the drug possession and possession for sale counts, he was convicted of the lesser included offense of simple possession of methamphetamine and possession of marijuana. Both are probation eligible. He was also convicted of possessing drug paraphernalia, a class 6 felony. The court imposed concurrent three-year probation sentences for the drug convictions, but, finding Proposition 200 inapplicable to the paraphernalia conviction, gave Hatton a prison sentence of 1.75 years on that count.

¶ 11 On appeal, also in Division One, the court of appeals applied *Estrada* and found Hatton's paraphernalia prison sentence improper. In its memorandum decision, the court vacated that sentence and remanded for sentencing under Proposition 200.

### State v. Holm

¶ 12 In an earlier case, *State v. Holm*, Division Two held that possession of paraphernalia is not a lesser included offense of personal drug possession or use and, in contrast with *Estrada* and *Hatton*, affirmed Holm's convictions and sentence of imprisonment. 195 Ariz. 42, 985 P.2d 527 (App.1998). The court appears to have concluded that all drug paraphernalia charges necessarily fall outside Proposition 200. While we may agree that a paraphernalia charge is not a lesser included offense, it does not follow that every paraphernalia charge, regardless of circumstance and the nature of paraphernalia, falls beyond the reach of the statute.

¶ 13 Holm was not convicted of actual possession or use of drugs but only possession of drug paraphernalia. The nature of the paraphernalia is not discernable from the court's opinion. Review by this court was not sought by Holm.

¶ 14 Because of the apparent conflict between *Holm* and the instant cases, we granted the State's petitions for review to determine the applicability of Proposition 200's mandatory probation provision to drug paraphernalia convictions. We address solely the circumstance in which the defendant is, or could have been, simultaneously charged with the dual crimes of (a) personal possession or use of a controlled substance, and (b) possession of associated paraphernalia. We have jurisdiction under article VI, section 5(3) and (4) of the Arizona Constitution.

### DISCUSSION

¶ 15 Whether Proposition 200 applies to drug paraphernalia convictions is a question of statutory construction subject to *de novo* review. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co., Inc.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). Our primary objective in construing a ballot initiative is to place a reasonable interpretation on "the intent of the electorate that adopted it." *Foster v. Irwin*, 196 Ariz. 230, 231, 995 P.2d 272, 273 ¶ 3 (2000) (quoting *Jett v. City of Tucson*, 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994)) (internal quotations omitted).

### I. Statutory Text

¶ 16 We begin the inquiry with the language of the statute:

A. Notwithstanding any law to the contrary, any person who is convicted of the personal possession or use of a controlled substance as defined in § 36–2501 is eligible for probation. The court shall suspend the imposition or execution of sentence and place such person on probation.

. . . .

C. Personal possession or use of a controlled substance pursuant to this section shall not include possession for sale, pro-

duction, manufacturing or transportation for sale of any controlled substance. A.R.S. § 13–901.01 (2000). A separate statute defines "controlled substance" by reference to extensive lists of drugs, drug compounds, and chemical precursors. A.R.S. § 36–2501 (2000) (citing controlled substance schedules at A.R.S. §§ 36–2511 to 2516 (2000)). Because these statutes do not specifically include paraphernalia, the State is correct that Proposition 200 does not expressly mandate probation for paraphernalia convictions. From time to time, however, we encounter circumstances in which the plain text of a statute, because of ambiguity or outright silence, fails to give effect to the legislature's obvious intent. As importantly, we interpret and apply statutory language in a way that will avoid an untenable or irrational result.

## II. The Statute Produces an Absurd Result

¶ 17 The State argues that our inquiry into voter intent must end with the statutory text because it is unambiguous and produces neither an absurd nor an irrational result. A result is "absurd 'if it is so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of persons with ordinary intelligence and discretion.'" *Perini Land Dev. Co. v. Pima County,* 170 Ariz. 380, 383, 825 P.2d 1, 4 (1992) (quoting *Bussanich v. Douglas,* 152 Ariz. 447, 449–50, 733 P.2d 644, 646–47 (App.1986), finding absurd a construction that would result in disparate treatment between public and private employees under the State's workers' compensation scheme, despite statutory use of the phrase "private employment"); *see also, e.g., Wheeler v. Yuma Sch. Dist. No. One,* 156 Ariz. 102, 107, 750 P.2d 860, 865 (1988) (finding that limiting the statutory term "classroom performance" to a teacher's conduct in the classroom would produce the irrational result that a teacher who mistreats students on the playground would not be entitled to the same notice and opportunity to cure as a teacher whose misconduct takes place in the classroom). The statute in *Wheeler,* as here, was entirely silent as to the specific actions charged against the defendant.

¶ 18 In both *Estrada* and *Hatton,* the court of appeals justifiably found it irrational to permit incarceration for possession of minor paraphernalia and to prohibit incarceration for the more serious crime of actual drug possession or use. The State has suggested no rationale for this inconsistent result, nor do we perceive any reasonable basis for it. *See State v. Rodriguez,* 153 Ariz. 182, 186–87, 735 P.2d 792, 796–97 (1987) (finding it "inconceivable" that the legislature could have intended the result that greater punishments attend less serious crimes).

## III. Results Contrary to the Voters' Intent

¶ 19 In addition, though we most commonly examine legislative history due to statutory ambiguity or absurdity, it is also well established that even where statutory language is "clear and unambiguous," we will not employ a "plain meaning interpretation [that] would lead to . . . a result at odds with the legislature's intent." *Resolution Trust Corp. v. Western Techs., Inc.,* 179 Ariz. 195, 201, 877 P.2d 294, 300 (App.1994) (McGregor, J.); *see also, e.g., Calik v. Kongable,* 195 Ariz. 496, 501, 990 P.2d 1055, 1061 ¶ 20 (1999) ("Courts should avoid hypertechnical constructions that frustrate legislative intent." (internal quotations omitted)); *Mail Boxes, Etc., U.S.A. v. Industrial Comm'n,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995) ("Where language is unambiguous, it is normally conclusive, absent a clearly expressed legislative intent to the contrary."); *Corbin v. Pickrell,* 136 Ariz. 589, 592, 667 P.2d 1304, 1307 (1983) ("[I]t is a basic 'tenet of statutory construction that where the statutory language is unambiguous, that language must ordinarily be regarded as conclusive, absent a clearly expressed legislative intent to the contrary.").

¶ 20 Proposition 200's intent provisions, which explicitly call for treatment rather than incarceration of first time drug offenders in order to reduce drug use and preserve prison space for more dangerous criminals, make it clear that the electorate, acting in the role of the legislature, did not intend to incarcerate for the lesser offense

and yet mandate probation for the more serious. Text of Proposed Amendment § 3(C),(E),(F), Proposition 200, 1996 Ballot Propositions.

¶ 21 Under the State's interpretation, the overwhelming majority of first time drug users would be subject to imprisonment despite Proposition 200's mandate that, "[n]otwithstanding any law to the contrary," qualifying defendants convicted of "personal possession or use of a controlled substance" shall receive probationary treatment. A.R.S. § 13–901.01(A) (2000). The court of appeals, Division One, found this construction directly at odds with the stated purposes of Proposition 200:

> The voters who insisted on probationary treatment for drug users could not have meant to mandate probation for possessing methamphetamine but permit prison for possessing a tube to smoke it in. The voters who sought to reserve prison space for violent offenders could not have intended, when a defendant is caught with a joint of marijuana, to require probation for the drug, yet permit prison for the rolling paper wrapped around it.

*Estrada,* 197 Ariz. at 388, 4 P.3d at 443 ¶ 21.

¶ 22 Most importantly, the State's approach compels an irrational result. The term "drug paraphernalia," broadly construed, includes virtually all devices or objects used or intended for use in connection with the possession, use, production, or sale of illegal drugs. A.R.S. § 13–3415(F)(2) (2000). The possession of otherwise innocuous items, such as "[b]lenders, bowls, containers, [or] spoons," would thus become criminal, simply by their regular association with drugs. A.R.S. § 13–3415(F)(2)(h) (2000). Yet, as a practical matter, a person will rarely, if ever, possess or use a controlled substance without also possessing these associated paraphernalia. Accordingly, there exists a conspicuous gap in the statute because it is silent as to paraphernalia. This is not the first time such a phenomenon has occurred. In *City of Scottsdale v. McDowell Mountain Irrigation & Drainage Dist.,* this court declined to read the statutory phrase "resident owners of real property" as meaning owners who physically reside on the real property, where doing so would require a "practical impossibility" and thereby "defeat" the statutory objective. 107 Ariz. 117, 122–23, 483 P.2d 532, 537–38 (1971). In the instant case, the "practical impossibility"—drug use occurring absent paraphernalia—arises because, in actual practice, drug possession routinely requires a container of some sort, such as a plastic bag or an envelope. And similarly, drug use is regularly facilitated by a delivery device of some kind, such as a syringe, a wrapper, or a smoking pipe.

¶ 23 To interpret Proposition 200 as mandating probation for the crime of smoking marijuana but permitting incarceration if the State charges the user for possessing paraphernalia because the shredded marijuana was wrapped in paper, produces a transparently absurd result.

■ ¶ 24 We hold, therefore, that the probation eligibility provisions of Proposition 200 apply to convictions for the possession of items of drug paraphernalia associated solely with personal use by individuals also charged or who could have been charged with simple use or possession of a controlled substance under the statute.[2] To find otherwise would permit the State to circumvent the manifest purpose of the statute and render Proposition 200 a practical nullity.

■ ¶ 25 We emphasize that Proposition 200 does not make all drug paraphernalia convictions probation eligible. The protec-

2. The concurring opinion urges the court to extend the application of Proposition 200 to include persons found exclusively in possession of paraphernalia but without the presence of illegal drugs. This argument raises the separate question whether the probation eligibility provisions can be applied to a "stand-alone" paraphernalia charge. We decline to address the question for two reasons. First, the stand-alone case is not presented on this record inasmuch as drugs were actually possessed by both *Estrada* and *Hatton.* Second, and more importantly, Proposition 200, by its own terms, depends on the actual presence of drugs. Accordingly, we have no authority to expand the Proposition to cover circumstances in which drugs are not present. Further extension is necessarily a matter for the legislature.

tions of the statute apply only to clearly defined individuals engaged in "personal possession or use of a controlled substance." The protections do not apply to individuals engaged in the "sale, production, manufacturing or transportation for sale of any controlled substance" or to paraphernalia associated with those activities. A.R.S. § 13–901.01(C) (2000). *See Foster,* 196 Ariz. at 233, 995 P.2d at 275 ¶ 7 ("Proposition 200 differentiates non-commercial possession or use from the commercial or potentially commercial trafficking in controlled substances."). This important distinction can be made by an appropriate instruction to the jury and the essential factual determination can be resolved by a simple interrogatory.

## CONCLUSION

¶ 26 Estrada's and Hatton's sentences of incarceration for possession of paraphernalia were properly vacated by the court of appeals. Accordingly, we affirm both decisions. Further, we expressly disapprove the analysis and result in *State v. Holm.*

CONCURRING: Frederick J. Martone, Justice, Ruth V. McGregor, Justice.

FELDMAN, Justice, specially concurring.

¶ 27 I fully agree with both the result and the court's reasoning. I write separately because I believe that same reasoning requires the court to go one step further to make certain the will of the electorate, which overwhelmingly adopted Proposition 200, is fully carried out.

¶ 28 The court today decides that a person found in possession of a controlled substance for personal use and the paraphernalia with which to use that substance is to be treated under Proposition 200, whether charged with possession of both drugs and paraphernalia or merely with possession of paraphernalia. But the court fails to deal with another category—the "stand-alone" case in which a defendant possesses only the paraphernalia with which to make personal use of a drug. Take, for example, a person who has smoked marijuana and, having finished, possesses only the pipe, the wrapper, or whatever other item might have been used. Consider also

the example of a person who has given up drug use but has not thrown away the paraphernalia. The court's analysis is equally if not more applicable to such stand-alone situations.

¶ 29 The court gives two reasons for not dealing with the problem. The first is that the stand-alone case is not presented by this record because drugs were actually possessed by both Estrada and Hatton. Opinion at ¶ 24 n. 2. But this third category of cases is encompassed within the issues presented to and accepted by us. In its petitions for review in both *Estrada* and *Hatton,* the state frames the issue regarding the paraphernalia charge as follows:

> Despite the absence of any reference to drug paraphernalia in the statute, does A.R.S. § 13–901.01 mandate probation for possession of drug paraphernalia?

Although the court states that it addresses "solely" the two issues involving defendants apprehended in possession of both a prohibited substance and paraphernalia, it notes that "we granted the *State's petitions for review* to determine the applicability of Proposition 200's mandatory probation provision to drug paraphernalia convictions." Opinion at ¶ 14 (emphasis added).

¶ 30 Further, the holding in *State v. Holm* was also quite broad:

> Because one can obviously possess narcotics paraphernalia without necessarily possessing or using a controlled substance, we hold that possession of narcotics paraphernalia is not a lesser–included offense of personal possession or use for purposes of § 13–901.01(A). Appellant's contention that our interpretation will lead to illogical and unfair results and permit disparate treatment of similar offenses is an argument properly addressed to the legislature rather than this court.

195 Ariz. 42, 44–45 ¶ 10, 985 P.2d 527, 529–30 ¶ 10 (1998) (footnotes omitted).

¶ 31 This holding would have been much more persuasive, of course, if the legislature had passed the statutes in question. Any doubt about interpretation could then be resolved by the legislature. But Proposition 200 was an initiative proposal, and substantive

amendment is pragmatically difficult if not impossible. The illogical and unfair results recognized in *Holm* thus must be considered by this court in trying to avoid unfairness and absurdity on the one hand and in carrying out the will of the electorate on the other. Therefore, the court today properly disapproves *Holm* by approving the *Estrada* court's reasoning. Opinion at ¶¶ 22, 24, 26.

¶ 32 I agree that *Estrada* was correctly decided. But *Estrada*'s reasoning was not as limited as today's decision. One of the questions decided in *Estrada* was: "Does Proposition 200 require probation for a defendant convicted [only] of possession of drug paraphernalia?" *State v. Estrada*, 197 Ariz. 383, 384 ¶ 1, 4 P.2d 438, 439 ¶ 1 (2000). The answer was "in the affirmative." *Id.* In *Estrada*, of course, Defendant was caught in possession of both drugs and paraphernalia. But the court's reasoning was broad:

> The instruments and devices that amount to paraphernalia are not unlawful per se; pipes, rolling papers, envelopes, even blenders may constitute drug paraphernalia, but only to the extent that they are used or intended to be used in conjunction with a controlled substance—that is, an unlawful drug. *See* A.R.S. § 13–3415. The voters who insisted on probationary treatment for drug users could not have meant to mandate probation for possessing methamphetamine but permit prison for possessing a tube to smoke it in. The voters who sought to reserve prison space for violent offenders could not have intended, when a defendant is caught with a joint of marijuana, to require probation for the drug, yet permit prison for the rolling paper wrapped around it. Such a scheme would make no sense; worse, it would defeat the purpose the enactment was meant to serve. Such a scheme would also contravene a general purpose of the criminal code, which is to reasonably differentiate among offenses and prescribe penalties proportionate to the crime. *See* A.R.S. § 13–101(4).

*Id.* at 387–88 ¶ 21, 4 P.3d at 442–43 ¶ 21 (footnote omitted). This analysis, explicitly approved today, *a fortiori* applies to the stand-alone cases.

¶ 33 This court's reasoning is even broader than that of *Estrada*. To interpret the statutes to permit imprisonment for possession of paraphernalia while requiring probation for possession of an illegal drug, the court says, would:

1. Lead to absurd results, it being "irrational to permit incarceration for possession of minor paraphernalia and to prohibit incarceration for the more serious crime of actual drug possession or use." Opinion at ¶ 18.

2. Reach a result that would frustrate the intent of the electorate, which "did not intend to incarcerate for the lesser offense and yet mandate probation for the more serious." Opinion at ¶ 20 (citation omitted). And

3. Send first-time offenders to prison for paraphernalia possession when the voters of Arizona have twice decreed they should be treated instead of incarcerated. Such an interpretation "produces a transparently absurd result." Opinion at ¶ 23.

¶ 34 Each of these reasons is correct. Each of them is equally applicable to the defendant caught in possession of only paraphernalia for personal use. Yet the court says today that the second reason for not dealing with the paraphernalia problem is that Proposition 200 "depends on the actual presence of drugs." Opinion at ¶ 24 n. 2. But Proposition 200 depends on the presence of drugs only because drugs are all it deals with. The word paraphernalia does not appear in Proposition 200 at all. It is the court that brings the paraphernalia issue—or at least two-thirds of it—within Proposition 200 to avoid absurd results and to effectuate the will and intent of the voters. The court is quite right in doing so but quite wrong in dealing with only two-thirds of the problem.

¶ 35 Why should we worry about the stand-alone problem? Even though the facts of these two cases do not present the stand-alone situation, it is evident from the cases that have come to our appellate courts that prosecutors have pressed the courts to treat possession of paraphernalia for personal use as outside the confines of Proposition 200. Because the court has limited today's holding, some prosecutors and judges will no doubt feel justified in continuing to treat

stand-alone defendants as prison-eligible, even though we have today held that the state should not ignore the will of the electorate and that it is improper for the courts to countenance such attempts. I would make it clear that we will continue to follow the electorate's intent in all cases to which Proposition 200 applies—as it logically must in stand-alone cases of possession of paraphernalia for personal use.

¶36 It has taken years for Estrada and Hatton to make their way through the court system to today's opinion acknowledging the will of the voters. But it is a pyrrhic victory. Both Estrada and Hatton served their full prison terms, only to learn today that they should have received treatment and probation instead of prison. To subject others who have been found in possession of only paraphernalia for personal use to the same experience would not only frustrate the aims of Proposition 200 but result in unnecessary expense and waste of judicial and prison resources. I simply see no sense in failing to take the last step required by logic, common sense, and Proposition 200.

CONCURRING: THOMAS A. ZLAKET, Chief Justice.